## J. C. MALLONEE v. J. G. YOUNG.

### *Broker—Negotiating Sale—Commissions.*

1. A broker is not entitled to commissions on a sale unless he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between the broker and vendor.

2. Defendant authorized plaintiff, a broker, to sell his property at a certain price, for certain commissions, reserving the right to withdraw the property from sale at any time, which he did. J., learning that the property was for sale, wrote to defendant inquiring the lowest price. Defendant enclosed the letter to plaintiff, saying, "I want $5,500 net," whereupon plaintiff had several conferences with J. and showed him the property, but effected no sale. Defendant again withdrew the property from sale, and in reply to a question from the latter as to the price he should name to inquirers, if there should be any, said: "If you find any one willing to give $5,500 net, let it go." A few days afterwards defendant sold to J. at $5,250; *Held,* that plaintiff, not having performed his part of the agreement, and not having been the efficient agent in making the sale, cannot recover commissions on the sale made by defendant to J.

CIVIL ACTION, tried before *Brown, J.,* at October Term, 1896, of MECKLENBURG Superior Court, for the recovery of commissions on the sale of real estate. Upon an intimation by his Honor that the plaintiff could not recover upon his own testimony, the latter submitted to a nonsuit and appealed. The opinion of Chief Justice FAIRCLOTH contains a full summary of the plaintiff's testimony.

*Messrs. Jones & Tillett* and *H. N. Pharr,* for plaintiff (appellant).

*Messrs. Osborne, Maxwell & Keerans,* for defendant.

MALLONEE *v.* YOUNG.

FAIRCLOTH, C. J. : This action is brought to recover commissions for an alleged sale of defendant's land by contract with defendant. As the case did not go to the jury by reason of the court's opinion that plaintiff could not recover according to his own evidence, the evidence must be taken as true. The original contract was that if plaintiff, a real estate agent, could sell at a specified price he was to receive usual commissions. Defendant stated : "I am to withdraw from your hands if I desire. If I sell the property myself when you have not worked up a sale, you are not entitled to any commissions. If I work up a purchaser and put in your hands, then I pay you one-half commissions." The plaintiff undertook to negotiate the sale, and kept the property advertised to sell at different prices, but made no sale. On May 29, 1895, the defendant withdrew the property from plaintiff's hands and paid expenses of advertising. There was then no contract. On June 1st the plaintiff wrote to defendant proposing to negotiate a sale at a less price. On July 18th the defendant asked plaintiff to see the very best net offer he could get. Plaintiff continued negotiating and advertising, but no sale was made. On August 21st C. W. Johnson, the final purchaser, wrote to defendant : "I understand you are offering your property on North Trade Street. If I am correct, please advise your lowest cash price." The defendant enclosed Johnson's letter to the plaintiff and wrote, "I want fifty-five hundred dollars net." Plaintiff saw Johnson several times, who offered $5,100. But defendant declined. On September 12th the defendant wrote to plaintiff, "I decide to withdraw my property from the market at once for a period, I don't know yet how long." On September 16th the plaintiff replied ; "I will stop the advertising. If there should be inquiries as to price,

what shall I say?" The defendant replied, "If you find a man or woman who is willing to give me net $5,500, then I say let it go." The plaintiff testified further that he heard no more about the property until he heard that defendant had sold it to C. W. Johnson at $5,250, sale made September 27th; that he was never authorized to sell for less than $5,400 net, usual commission 5 per cent., and that he had no contract, except those in the letters.

The plaintiff then introduced C. W. Johnson, the purchaser, who testified: "I wrote the letter of August 22d to defendant. I had seen the property advertised for sale by Mallonee. I saw Mallonee going in to look at the property with another party as I was passing, and I wrote to Young the same day. Mallonee came to see me a few days after I had written to Young. He saw me several times in regard to buying the property."

Johnson received a letter from Young about buying, some two weeks before he bought, on September 27th at $5,250. The correspondence was reopened by Young. "I had a conversation with Walter Brem in regard to the property, and he offered it to me for sale. This was sometime before I saw Mallonee in regard to the property and before I saw his advertisement. The negotiations with Brem had been abandoned. I was not acquainted with Mallonee when I wrote the letter to Young."

The plaintiff does not contend that he made any sale according to his contract, but insists that he worked up a purchaser and brought him in contact with the vendor, and that a sale was made in consequence of his communications and agency with the purchaser, and that he was entitled to pay for his services. He says that he was never authorized to sell for less than $5,450; and it appears from the evidence that he never found a purchaser who was able, ready, and willing to pay that price.

MALLONEE *v.* YOUNG.

To recover commissions, he must be the efficient agent or the procuring cause of the contract of sale, from which cause or agency the sale resulted.   2 Am. & Eng. Enc. of Law, 584.   " A broker who negotiates the sale of an estate is not entitled to his   commissions   until   he finds a purchaser in a situation and ready and willing to complete the purchase on the terms agreed upon between the broker and the vendor."   *McCavock* v. *Woodlief*, 20 How. U. S., 221 ; *Lipe* v. *Ludwick*, 14 Ill. App., 372.

In *Martin* v. *Holly*, 104 N. C., 36, the evidence was conflicting, but upon proper issues submitted the jury found as a fact that the broker found a purchaser ready and willing to pay the price, at which the defendant sold to such purchaser, and it was held that the plaintiff had performed his part of the contract and was entitled to recover.   In the case now before us, looking carefully at the evidence, we are unable to see that the plaintiff " procured " the purchaser, Johnson.   He was first informed that the defendant desired to sell his lot, and promptly wrote to the defendant on the subject.   This was, however, before he had met the plaintiff or had seen his advertisement.   The purchaser and the plaintiff examined the property afterwards, and had several conversations about it, but they agreed on nothing.   The purchaser afterwards conferred with the vendor and paid him $5,250 for the property.   We can see that the plaintiff rendered some service, but he did not perform his part of the agreement, and we cannot see that he was the efficient agent in the sale.   The sale was by the defendant to the purchaser, after the plaintiff had failed on his part and the property was out of his hands.   As the plaintiff's evidence is taken as true, we see nothing in it so dubious as to require the intervention of a jury, and in such case the

Court as a matter of law may so hold, and withhold the case from the jury and apply the law as the Court understands it. *State* v. *Kiger*, 115 N. C., 746.

Affirmed.