R. A. CROWELL v. J. M. PARKER ET AL.

(Filed 26 April, 1916.)

**1. Principal and Agent—Sale of Lands—Commissions.**

 In an action for the alleged breach of a brokerage contract for the sale of lands by the agent to recover his commissions it is necessary for the agent to show he had been successful in procuring a purchaser who not only was able and willing to take the lands in accordance with the terms of the contract, but who would have done so except for the defendant's default.

**2. Same—Deeds and Conveyances—Escrow—Parties—Parol Contracts—Trials —Evidence—Questions for Jury.**

 In an action to recover brokerage commissions upon the alleged breach of the contract of a vendor of lands that the purchase price should be a certain sum payable part in cash, the deferred payment to be secured by a mortgage on the lands, there was evidence tending to show a later agreement between the parties and a proposed purchaser that the purchase price should be a less sum, and the defendant delivered the deed in escrow in the form of a receipt from the holder stating that the parties had agreed thereto, but which was not signed by either the vendor or proposed purchaser, and that the deeds were to be delivered upon receipt of part of the purchase price and a mortgage on the lands securing the deferred payment; that the proposed purchaser withdrew from the arrangement and the vendor received back the deed held in escrow and sold the lands to a stranger to the transaction: *Held*, the escrow, as to the vendee, rested in parol and was unenforcible; and upon the entire evidence the question as to whether the

CROWELL v. PARKER.

plaintiff had procured a purchaser in accordance with the terms of his contract was a question for the jury, under proper instructions, and it was reversible error for the trial judge to direct a verdict thereon in plaintiff's favor as a matter of law.

**3. Principal and Agent—Sale of Lands—Contracts—Commissions—Default of Principal.**

An agent for the sale of real estate upon commission who finds a purchaser who is ready, able, and willing to purchase it on the authorized terms is entitled to his compensation, if the sale is prevented by default of his principal in refusing to consummate it.

APPEAL by defendants from *Carter, J.,* at October Term, 1915, of STANLY.

Civil action. The plaintiff, a real estate broker, sued for the recovery of $450, alleged to be due by the defendants J. M. Parker and Luther Shirey, as commissions on the sale of 380 acres of land in said county, and known as the David Melton home place. The contract was as follows:

On this, 4 May, 1912, I hereby authorize and empower R. A. Crowell to sell for me my tract of 380 acres of land located on the waters of the Yadkin River near the Swift Island Ferry and known as the David Melton land or home place, at the price of $5,000, payable $2,000 cash and $1,500 and interest on the deferred payments each year for two successive years, the deferred payments to be secured by notes and mortgage on the property. And in the event the timber, or any part of it, on said land is cut before the notes and mortgage for the deferred payments have been paid, the sum of $3 per 1,000 feet for all timber cut is to be applied on said notes and mortgage, as may be agreed upon by the purchaser and myself. I make R. A. Crowell my sole agent for that purpose, and in case a sale is made by him or through his influence or advertising, I do contract and agree to execute to the purchaser a deed in fee for the said property, reserving to myself all the rents from the property or farm this year. The said R. A. Crowell shall receive as compensation for his services 10 per cent of the price above named, to be arranged out of the first payment of $2,000. This contract may be terminated by me after six months from the above date, upon giving written notice of my withdrawal of the same.

J. M. PARKER. [SEAL]

The jury returned the following verdict:

1. Did the defendant J. M. Parker execute and deliver to the plaintiff the contract marked Exhibit "A," as alleged in the complaint? Answer: "Yes."

2. Did the defendant J. M. Parker sell the land described in said contract to the defendants L. S. Shirey and J. M. Cook before the expiration of said contract, as alleged in the complaint? Answer: "Yes."

3. Was said sale made through the efforts, influence, advertising, or personal solicitation of the plaintiff? Answer: "Yes."

4. In what amount, if any, is the defendant J. M. Parker indebted to the plaintiff? Answer: "$450."

The court instructed the jury to answer the first and second issues "Yes," if they believed the evidence, and then instructed them as to the evidence upon the third issue. Judgment was entered upon the verdict, and the defendants appealed.

*R. E. Austin and J. A. Spence for plaintiff.*
*Robert L. Smith for defendants.*

WALKER, J., after stating the case: It is not necessary that we should set forth even the substance of all the evidence. The case, as we view it, turns upon the meaning of the contract between the plaintiff and J. M. Parker and the nature of the transaction between J. M. Parker and L. S. Shirey, who acted, it seems, for himself and J. M. Cook. We will assume, for the sake of discussion, that the plaintiff by his efforts and influence brought the parties, Parker and Shirey, together to make their trade in regard to the land. It appears that the first negotiations for a sale by Parker to Shirey and Cook at $5,000, the amount mentioned in the plaintiff's contract, fell through, and afterwards, but before the contract between plaintiff and Parker had been terminated by notice, Shirey agreed orally to buy the land at $4,500, payable in certain installments. On 9 November, 1912, Parker deposited with M. J. Harris, assistant cashier of a bank in Albemarle, two deeds to Cook and Shirey, duly executed and probated; one for the land and the other for the timber on the dower tract containing 108 acres, and Harris delivered to Parker a written receipt for the same, signed by him and reciting that the deeds were to be held in escrow, upon the condition that if Cook and Shirey paid $2,000 by 1 January, 1913, and secured the balance of the purchase money ($2,000) by a mortgage on the land, the deed of Parker should be delivered to them. The paper also recited that the grantors and grantees had agreed to the arrangement set forth by it, but neither the grantors nor the grantees signed the receipt, nor is there any evidence that Shirey or Cook authorized it to be signed for them, or that they even saw it at the time it was given. It was merely a receipt which M. J. Harris gave J. M. Parker for the papers, stating the purpose for which they were left with him. The evidence, in no reasonable view of it, can be considered as showing that Shirey and Cook were bound in writing by an agreement with Parker to buy the land. As against them, the contract was legally unenforcible. This being so, what are the relations of the parties, and the rights incident thereto?

It is plain that the defendant, though he afterwards sold the property, that is, in April, 1913, has received nothing from that sale which was

produced by the effort or agency of the plaintiff, and we do not understand that anything is claimed as accruing to the plaintiff from it. It may also be said that the result from the agency of the plaintiff in his attempt to sell the property to Shirey and Cook has been, in one view of the evidence, unavailing, if not entirely unsuccessful. The defendants have reaped no benefit from it, but have lost valuable time in their fruitless efforts to come to a binding agreement in respect to it. The law seems to be well settled that the broker's right to commissions depends upon the successful performance of his services, and nothing is to be paid unless a bargain is effected. A prospective or contemplative agreement is not sufficient. The negotiations must culminate in the production of a person ready, able, and willing to buy, if the vendor will sell to him, or who will enter into an enforcible agreement for the purchase of the property. The subject is fully considered in *Lunney v. Healey,* 44 L. R. A. (O. S.), 593, to which there is an elaborate and exhaustive note collecting and reviewing the cases. It can make no difference, however, if the broker, by his efforts, has brought forth a purchaser able, willing, and ready to accept the principal's offer of sale, that the specific terms of the contract of sale are arranged by the latter; but the broker must show, as has been said, that he effected either a completed sale or an agreement to purchase which is susceptible of enforcement against the purchaser.

We do not think the evidence in this case was such or so conclusive as to authorize the instruction which was given by the court upon the second issue. There was, on the contrary, evidence from which a jury might reasonably find that the plaintiff had not produced a person ready, able, and willing to buy the land, or to make a binding agreement to do so. The negotiations between the parties resulted only in a conditional sale, in the nature of an option, that Shirey should deposit $500, and upon his paying $2,000 on or before 1 January, 1913, and then executing a mortgage upon the land for the balance, the escrow should be delivered to him. But this Shirey did not do, nor was he ready, able, and willing to comply with this condition at the appointed time, nor has he since made any tender of the money or the mortgage, but has altogether withdrawn himself from this transaction. It is true that the plaintiff took the deed from the clerk on 2 January, 1913; but this he may have done because Shirey had failed to appear and perform the conditions of the agreement. Parker could not compel Shirey to perform, for the contract, as to him at least, was oral.

We do not hold that the plaintiff is not entitled to recover, as the facts are not so clearly presented as to justify such a ruling; but what we must be understood as deciding is that there is evidence from which the jury may infer that there was no sale, according to the terms of plaintiff's agreement.

Without discussing the authorities in detail, we cite the following as pertinent to the case: *Trust Co. v. Adams,* 145 N. C., 161, 166; *Levy v. Kottman,* 32 N. Y. Suppl., 241, where the cases are collected; *Diamond v. Hartley,* 55 N. Y. Suppl., 994; *Kronenberger v. Bierling,* 76 N. Y. Suppl., 895; *McPhail v. Buell,* 87 Cal., 115; *Wilson v. Mason,* 158 Ill., 204.

The second case above cited closely resembles this one in some of its features. But it must be borne in mind that if an agent, who is employed to sell real estate, finds a purchaser who is ready, able, and willing to purchase it on the authorized terms, his right to commissions will not be impaired by the default of his principal in refusing to consummate the sale. The seller cannot complain if he is made to pay commissions because, by his own fault, he has lost a bargain upon his own terms. *Parker v. Walker,* 86 Tenn., at p. 569, where it is said: "To procure a purchaser of real estate not only implies that the purchaser shall be one able to comply, but the further idea, that the seller and the purchaser must be bound to each other in a valid contract. To this we must agree. An oral agreement upon the part of the purchaser would not be a valid agreement; and if he refused to complete the sale after such oral agreement, without fault upon the part of the seller, the obligation of the broker would not be fulfilled, and he could not recover his commissions. If, on the other hand, the purchaser was not only able, but willing, to complete the sale, and the vendor then refused to sell, or is unable to fulfill the terms upon his part or make a good title, or the trade falls through for any other default upon the part of the seller, the commissions are nevertheless earned. Addison on Contracts (Morgan's Ed.), vol. 2, sec. 931; *Cooke v. Fiske,* 12 Gray, 491; *Tooms v. Alexander,* 101 Mass., 255 (*s. c.,* 3 Am. Rep., 349); *Mooney v. Elder,* 56 N. Y., 238." See, also, *Aigler v. Carpenter P. L. Co.,* 51 Kansas, 718.

What we have stated is, of course, based entirely upon a consideration of the terms of the agreement between the plaintiff and Parker, which have been set forth. There is evidence that this contract has not been complied with.

Whether the sale fell through by reason of the fault of the owner of the property, or it failed because the purchaser was not able, ready, and willing to buy, is for the jury to determine upon all the evidence and under proper instructions as to the law applicable thereto.

The cases on the subject in our Reports have very little or no bearing upon the precise question raised in this appeal, as the sales in those cases were generally consummated. *Trust Co. v. Goode,* 164 N. C., 19, relied on by the plaintiff, was a case of that kind, and to the same effect are the authorities cited therein. It is undoubtedly true, as decided in those cases, that a principal cannot take the benefit of his broker's ser-

vices and refuse to pay for them; but that is not the only question here. *Aigler v. Carpenter, supra; Pehl v. Fenton,* 119 Pac. Rep. (Cal.), 400.

There was error in the charge of the court, and a new trial therefore is granted.

New trial.